In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3055

LEIBUNDGUTH STORAGE & VAN SERVICE, INC.,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF DOWNERS GROVE, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 9851 — **Edmond E. Chang**, *Judge.*

ARGUED MARCH 27, 2017 — DECIDED SEPTEMBER 24, 2019

Before BAUER and EASTERBROOK, *Circuit Judges*, and
DEGUILIO, *District Judge.**

EASTERBROOK, *Circuit Judge*. An ordinance in Downers
Grove, Illinois, limits the size and location of signs. Lei-
bundguth Storage & Van Service contends that this ordi-
nance violates the First Amendment to the Constitution (ap-

---

* Of the Northern District of Indiana, sitting by designation.

plied to the states by the Fourteenth) because it is riddled with exceptions and therefore is a form of content discrimination that the Village has not justified. See *Reed v. Gilbert*, 135 S. Ct. 2218 (2015). But because the principal topic of the ordinance is commercial speech, the district court concluded that *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980), rather than *Reed* supplies the rule of decision, and it found the ordinance valid. 150 F. Supp. 3d 910 (N.D. Ill. 2015). We conclude that, whether or not *Reed* applies, this does not do Leibundguth any good because it is not affected by the problematic exceptions.

Downers Grove has a comprehensive ordinance regulating signs. Section 9.020 sets out rules for all signs, including a rule prohibiting "any sign painted directly on a wall" (§9.020.P). Section 9.050.A sets a size limit: for buildings such as Leibundguth's, which are closer than 300 feet to a street, the maximum is 1.5 square feet per linear foot of frontage—which implies a limit of 159 square feet for Leibundguth's building. Section 9.050.C.1 provides that each business may have only one sign, though an amendment in 2015 allows businesses that face both a street and a railroad an extra sign on the railroad side. Section 9.030 creates exceptions: the ordinance does not require permits for holiday decorations (§9.030.D), temporary signs for personal events such as birthdays (§9.030.E), "[n]oncommercial flags" (§9.030.G) (flags can be used to send political messages), political and noncommercial signs that do not exceed 12 square feet (§9.030.I), "[m]emorial signs and tablets" (§9.030.K), and about a dozen more. These exclusions set up Leibundguth's argument that the ordinance represents content discrimination prohibited by *Reed*.

The Village insists that the ordinance regulates commercial speech only. We need not decide which decision—*Reed* or *Central Hudson*—must give way when a commercial-sign law includes content discrimination. (One circuit recently held that *Reed* supersedes *Central Hudson*. See *Thomas v. Bright*, 2019 U.S. App. LEXIS 27364 (6th Cir. Sept. 11, 2019).) *This* ordinance is comprehensive. Section 9.010.B tells us so: "The regulations of this article apply to all signs in the village, unless otherwise expressly stated." And if that were not clear enough, the exceptions are revealing. Why exclude modestly sized political signs (§9.030.I) from the permit requirement unless they are included for other purposes?

Suppose we were to hold that commercial signs must be treated the same as flags and political signs. Leibundguth's problems come from the ordinance's size and surface limits, not from any content distinctions. One of Leibundguth's signs is painted on a wall; another is too large; a third wall has two signs (as the Village counts them); and the size of these signs, conceded to exceed 500 square feet, vastly exceeds the limit of 159 square feet for Leibundguth's building (and the limit of 12 square feet for political signs).

Let us start with the largest of Leibundguth's signs, which faces the railroad tracks—and which Leibundguth tells us leads to as much as 20% of its revenue, by appealing to commuters who see the sign when going to and from work.



This sign is 40 feet long and 10 feet high, or 400 square feet. It is painted on a brick wall. The ordinance's size limit and no-paint-on-walls rules independently forbid this sign. It would fare no better if it were a flag or carried a political message. It exceeds 12 square feet, so it would not be saved by §9.030.I. And the exemptions for flags (§9.030.G) and political signs pertain only to the permit requirement; they do not exempt flags or political signs from §9.020.P, which bars signs painted on walls. Likewise with the exception for temporary signs (§9.030.E)—not that "temporary" is a form of content discrimination in the first place. Anyway, Leibundguth does not want to use temporary signs.

Leibundguth insists that the exclusions in §9.030 remove the size and no-paint-on-walls rules for flags and other listed subjects. But that's not what §9.030 itself says. It begins by stating that the excluded signs do not require permits; it does *not* say that rules for all signs stated elsewhere in the ordinance drop out. Section 9.010.B says that all of the ordinance's rules apply to all signs unless they are "expressly" excluded; §9.030 does not expressly remove any signs from

the size and no-paint-on-walls rules. Leibundguth's argument rests on a report prepared by a Village official suggesting that the ordinance does not prohibit purely decorative murals and flags. But the Village itself disclaims this non-textual reading. The Village's understanding of its own ordinance carries the day, see *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992), in the absence of some indication that it has enforced the ordinance in a way that permits large political signs or flags painted on walls. See *Construction & General Laborers Union v. Grand Chute*, 915 F.3d 1120 (7th Cir. 2019). And Leibundguth has not offered any evidence that the Village has enforced the ordinance as Leibundguth reads it, rather than as how the Village tells us the ordinance works.

A limit on the size and presentation of signs is a standard time, place, and manner rule, a form of aesthetic zoning. The Supreme Court has told us that aesthetic limits on signs are compatible with the First Amendment. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 810–12 (1984). Like other time, place, and manner restrictions, an aesthetic rule must serve its ends; it cannot be arbitrary. The rule must be justified without reference to the content or viewpoint of speech, must serve a significant government interest, and must leave open ample channels for communication. See *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

As the district court explained, 150 F. Supp. 3d at 922–24, the Village gathered evidence that signs painted on walls tend to deteriorate faster than other signs (Leibundguth's own sign is full of chipped paint and flaking bricks) and, when revised or painted over, can become downright ugly.

Old paint may show through; efforts to remove paint may leave a ghost image or bleach the brick so that the building becomes mottled. Leibundguth tells us that those effects are too slight to justify legislation, but *de gustibus non disputandum est*. ("There's no accounting for taste.") People's aesthetic reactions are what they are; if a large number of people find paint-on-brick ugly, and paint-over-paint-on-brick worse, this is a raw fact that a governmental body may consider. It need not try to prove that aesthetic judgments are right.

Likewise with size. Many people view signs as a necessary evil and believe that smaller = less evil. Unless the government has engaged in content or viewpoint discrimination, that aesthetic judgment supports legislation. The Village's ordinance contains content discrimination, but as we have explained that discrimination does not aggrieve Leibundguth. And the parties agree that enforcement of the sign ordinance leaves open plenty of ways to communicate. Advertising does not depend on applying paint to brick— and although 159 square feet of signage on Leibundguth's building is less than it prefers to use, 159 square feet is still a large sign. Leibundguth also is free to advertise in print or over the Internet.

The parties dispute how the Village's ordinance applies to the signs on two other faces of Leibundguth's building, but none of the possibilities poses a constitutional issue distinct from the ones we have already addressed. What we have said is enough to show that the ordinance, as applied to Leibundguth, does not violate the First Amendment.

AFFIRMED